HUDSON AND MANHATTAN RAILROAD COMPANY, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

Third Department, November 14, 1917.

**Tax — transfers taxable under section 270 of the Tax Law — agreement for readjustment of debts of corporation construed.**

The stock of a railroad company was held by voting trustees who issued certificates to the stockholders. The debts of the company needing readjustment, an agreement therefor was made between so-called readjustment managers, a trust company as depositary, and the stockholders and bondholders as depositors. Provisions of the agreement and the acts of the parties thereunder examined, and *held*, that there were two transfers, one from the trust company to the managers and the other from the managers to new voting trustees, both transfers being liable to tax under section 270 of the Tax Law, as amended.

The fact that the voting trustee who acquired title from the trust company directed said company as its agent to deliver the stock to the new trustee, does not change the legal effect of the transaction.

APPEAL by the defendant, The State of New York, from an order and determination of the Board of Claims, entered in the office of the clerk of said board on the 25th day of May, 1915, awarding a judgment to the claimant.

*Merton E. Lewis, Attorney-General* [*Edmund H. Lewis, Deputy Attorney-General,* of counsel], for the appellant.

*Stetson, Jennings & Russell* [*Winfred T. Denison* of counsel], or the respondent.

KELLOGG, P. J.:

In making the transfer or transfers hereinafter referred to, two transfer taxes were paid under protest, and by the decision of the Board of Claims the plaintiff has judgment for the return of the amount of one of said taxes upon the theory that but one transfer was made.

The stock of the Hudson and Manhattan Railroad Company was held by Messrs. Clarke, Fisk & Barnum, as voting trustees, the stockholders holding certificates issued by such trustees in lieu of stock. The debts of the company needed readjustment [and a plan and agreement for that purpose was made. Kuhn, Loeb & Co. and others were the readjustment managers; the Guarantee Trust Company of New York, the depositary, and the agreement for a readjustment of the debt was made between the managers, the depositary and the stockholders and bondholders as depositors. By the agreement of January 14, 1913, among other things, the stockholders and the holders of the voting trust certificates were to deliver their stock or certificates to the depositary, to be held by it in escrow, the title, however, for all purposes of the agreement to be in it until the managers signified their acceptance of the plan by filing with it a certified copy of a resolution adopted by them, stating that they had determined to accept the transfer to them of the securities, and that thereupon the title to the stock and certificates was to be in the managers. The plan contemplated that the original stockholders were to receive back their stock after the debts

were adjusted, if as required they paid eight dollars and fifty cents for each one-hundred-dollar certificate, for which payment they were to receive certain bonds.  If they failed to pay they would lose their stock and the managers could sell it or dispose of it at their discretion, realizing the eight dollars and fifty cents thereby.  The managers were to form a syndicate and were to take over for cash, or its equivalent, certain bonds to be issued under the plan, and when the plan was perfected the managers were to form a new voting trust, the stock to be transferred to the new trustees for voting trust certificates.  The depositary, upon receiving the stock or certificates from the owners, was to issue to them in place thereof certificates of deposit, which were to be negotiable in form and in a way representing the stock or the voting trust certificates.  Until the managers filed the certified resolution with the depositary, the depositors, subject to the agreement, were deemed to retain " and shall have the ownership of and title to their respective bonds and stock." The stockholder might withdraw his stock upon paying his *pro rata* share of certain expenses.  After title became vested in the managers, the agreement provided that the depositary " shall dispose of the deposited bonds and stock of the Company in such manner as the managers, or a majority thereof, may from time to time direct, and any direction given by the managers, or by a majority thereof, as to any matter whatsoever, shall be full and sufficient authority for any action of the Depositary."

The holders of the original voting trust certificates deposited them, duly stamped, with the depositary, under the agreement, and the readjustment of the debt followed as per the plan.  The record does not show, but I think we must assume, that the managers filed with the depositary the certified resolution that they had entered upon the performance of the agreement.  Until that resolution was filed, the depositary was holding the certificates, in a way, in a dual capacity as trustee for the stockholders and for the managers as they were respectively interested under the agreement.  When the certified resolution was filed, the title to the voting trust certificates passed to the managers.  The agreement contemplated a transfer of the certificates to the

managers, and that the managers in due time would surrender them and receive the stock therefor, and would then transfer the stock to the new voting trustees when appointed.   There were, therefore, two transfers contemplated.   But instead of transferring the certificates to the managers, the depositary, August 25, 1913, delivered to Clarke and others, the original voting trustees, a letter referring to the plan, and saying that acting for the managers they surrendered the certificates and requested the trustees to issue a certificate of the stock in the name of Warburg and others, new voting trustees, and to deliver it to Harvey Fisk & Sons, the agent for such trustees, and inclosed a check for double the usual amount of a transfer tax, saying that it might be claimed by the State authorities " that there are in what we propose really two transfers, although we dispute this."

It would seem, under the agreement and under this letter, that the tax was paid by the managers through the trust company acting as their agent, and that the tax was a charge against the managers and not against the plaintiff company, and maybe the action should have been brought in the name of the managers.

Clearly the title to the voting trust certificates passed from the depositary to the managers, under the agreement, when the certificate was filed, and the letter under which the stock was delivered to the new trustees recognizes that fact and directs the transfer as the agent of the managers.   Viewing the matter most favorably to the respondent, there was one transfer under the agreement from the depositary to the managers and another transfer by the managers to the new voting trustees.

The fact that the trust company did the business for the managers is immaterial, as they were doing it in the name of and for the managers.   When the managers transferred the stock to the new trustees, there was a transfer of the stock itself.   According to the rights and duties of the parties under the agreement, there were in fact two transfers, and the fact that one transfer was not by an actual passing over of the physical property from the trust company to the managers is immaterial, for the trust company recognized a change of ownership and that it was handing over the stock, not as

the depositary of the stockholders, but as the agent of the managers who were in fact the owners. The property was handled but once, but there were two legal transfers of it and two changes of title.

The statute imposing the tax (Tax Law, § 270, as amd. by Laws of 1912, chap. 292) is very broad and sweeping in its terms. The tax is " on all sales, or agreements to sell, or memoranda of sales of stock, and upon any and all deliveries or transfers of shares or certificates of stock, * * * whether made upon or shown by the books of the association, company or corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of sale or transfer, whether intermediate or final, and whether investing the holder with the beneficial interest in or legal title to said stock, or merely with the possession or use thereof for any purpose, or to secure the future payment of money, or the future transfer of any stock."

Here was a transfer of the stock by agreement for the adjustment of the debt. That agreement legally, upon the conditions being performed, transferred the title of the certificates from the trust company to the managers and the title of the stock itself from the managers to the new voting trustees. The fact that for convenience, or for the purpose of avoiding payment of the tax, the voting trustee who acquired the title from the trust company directed the trust company, as its agent, to deliver the stock to the new trustee, does not change the legal effect of the transaction. We conclude that by the agreement and the acts of the parties there were two transfers, one from the trust company to the managers and the other from the managers to the new voting trustees.

The judgment should, therefore, be reversed and the claim dismissed.

All concurred.

Judgment reversed, with costs, and claim dismissed.